[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: NOTICE OF SUSPENSION OF RIGHTS OF VISITATION
On December 21, 1992 this court issued a Memorandum of Decision regarding the third custody review in this case. In so doing, the court noted that 80% of the life of the subject child, Christie, soon to be age eight, has been subjected to the uncertainty of custody along with all of the attendant negative psychological factors.
The latter decision awarded custody to Christie's mother with rights of reasonable visitation to her father.
The court expedited the December 21, 1992 memorandum in order to provide some stability for Christie for the Christmas holidays and to allow her parents the maximum amount of time to prepare for same.
In view of what occurred after the promulgation of the December 21, 1992 decision, this court can safely conclude that its initial analysis of CT Page 183 Charles Stoldt was absolutely accurate and, sadly, prophetic, as well.
The court viewed Charles Stoldt as a man who purports to love his daughter, and perhaps does, but with negative results for his daughter. In other words what Charles Stoldt viewed as his acts of love toward his daughter were really acts designed to fulfill his own needs, not hers. As will be seen shortly, he proves this to the court beyond any reasonable doubt.
The December 21, 1992 decision made the following observations:
 1. ". . . one parent (father) cannot see the difference between his need for the child and the child's needs."
 2. Father ". . . has little insight into himself as a person or a parent."
 3. "He (father) has not availed himself of any counselling services, which might provide that insight which would significantly improve his effectiveness as a parent and person, not to mention providing him with some satisfaction and happiness in his life."
 4. "The father is so wrapped up in his own emotional needs from the child. . . .that his thought processes in this area are impaired."
5. "He presents to the court as a distraught, yet inflexible parent."
 6. "He unwittingly makes statements that reflect his lack of understanding of the parenting role now and in the future."
7. ". . .the father is oblivious to the needs. . .of the child. . ."
 8. If Christie has a sad childhood and a troubled adolescence her therapist of the future need only to look at the transcript of the custody hearing and this memorandum to find the source of her problems.
The bottom line of all this was the court's sense that father was driven not by his love for his daughter, but by his narcissistic need for his daughter. Subsequent events unfortunately proved the court's analysis to be absolutely correct. For when a choice was to be made between his emotional needs and his daughter's, father chose himself.
Father was given visitation with Christie on Christmas Day from 6:00 p.m. until 6:00 p.m. the next day, December 26, 1992. On or about January CT Page 184 4, 1993, this court received a letter from father indicating that he no longer would visit with Christie nor pay child support. He arrogantly added that she could look him up in ten years when she is eighteen years old. The letter was dated December 26, 1992 and is appended.
Subsequently, the court learned of other actions at that time by father which can only be characterized as cruel, mean spirited, vulgar and bordering on the criminal. If true, these subsequent actions shock the sensibilities of the court.
It has been reported to the court and verified by affidavits, that the following events occurred in the immediate aftermath of the court's December 21, 1992 decision.
1. At the request of the court and in order to give the parents as much advance notice as possible, the family relations officer was ordered to convey the change of custody and modified visitation schedule to the parents telephonically. Upon conveying this information to the father's father, (the grandfather whom the father suggested as permanent guardian for Christie), she was met with verbal abuse from him describing what he viewed as "bureaucratic idiots."
2. Instead of returning Christie to her home as per the court order, via a third party, the father dropped his seven year old daughter off at a police station! Most reasonable adults would understand the dread, fear and terror such action would have on a seven year old child. To be abandoned there, even for a short while with strangers and the implications of jail, bars, punishment and loneliness creates unspeakable harm to a child. No truly, loving and mentally balanced person would place a child in such a situation.
3. It is alleged that father compounded this egregious behavior by directing foul language to this child and informing her that she no longer had a father.
It has been reported to this court that the father has had no further contact with Christie since the fateful December 26, 1992 debacle.
The court has grave concerns for the physical and mental health of Christie and is adamant that the parental assaults on her emotions cease. Therefore, the court, sua sponte, hereby suspends all visitation by father with Christie, giving weight to both the need to protect her and her father's written statement as well.
BY THE COURT, GILL, J
[EDITORS' NOTE: THE ATTACHED FORM IS ELECTRONICALLY NON-TRANSFERRABLE.] CT Page 185